**Affirm and Opinion Filed August 25, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-01205-CV**
_____

**IN THE INTEREST OF E. H., A MINOR CHILD**

**On Appeal from the 254th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-18-18908**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

Calvin Mabvurunge appeals the trial court's order adjudicating him as E.H.'s father and ordering him to pay monthly child support, prenatal and postnatal healthcare expenses, and retroactive child support to appellee Tendai Chimbewa. In four issues, Mabvurunge contends the trial court abused its discretion in (i) ordering him to submit to genetic testing; (ii) "divesting [him] of parental rights;" (iii) ordering him to pay child support, prenatal and postnatal healthcare expenses, and retroactive child support; and (iv) ordering him to pay Chimbewa's attorney's fees. We affirm the judgment of the trial court.

# I. BACKGROUND AND PROCEDURAL HISTORY

Chimbewa claims she and Mabvurunge are the parents of E.H. who was born on September 19, 2016. At the time E.H. was conceived and this case was tried, Mabvurunge was married to Rumbidsai Mabvurunge and Chimbewa was married to Earl Hoover.

On September 17, 2018, Chimbewa filed suit against Mabvurunge and sought an order from the trial court that Mabvurunge pay child support and "an equitable portion of all prenatal and postnatal health-care expenses of the mother and the child" and retroactive child support. Mabvurunge resides in Washington State and was served by alternative service on November 10, 2018. On January 2, 2019, Chimbewa served Mabvurunge with a subpoena to appear and testify at a temporary orders hearing on January 8, 2019, before the Associate Judge of the trial court.

On January 8, 2019, Associate Judge Donald Turner held a hearing at which Mabvurunge failed to appear. Associate Judge Turner ordered Mabvurunge to submit to genetic testing on or before January 15, 2019. Chimbewa served this order on Mabvurunge, but he did not submit to genetic testing on or before January 15, 2019.[1] On May 23, 2019, the trial court held a hearing at which Chimbewa and Mabvurunge appeared, and District Judge Ashley Wysocki ordered Mabvurunge to

---

[1] On January 13, 2019, Mabvurunge emailed Chimbewa's counsel partial photographs of a Motion to Set Aside Default Judgment and Notice of Hearing—which was dated January 12, 2019, and referred to a "default judgment" the trial court entered on January 8, 2019. The record contains no default judgment against Mabvurunge.

submit to genetic testing. Mabvurunge submitted to genetic testing, and the results showed Mabvurunge had a 99.99999997% probability of paternity of E.H.

At the final trial on July 29, 2019, Chimbewa and Mabvurunge testified, and several documents were admitted into evidence—including Mabvurunge's genetic testing results. Chimbewa's counsel testified as to her attorney's fees. The trial court found Mabvurunge is E.H.'s father and entered several orders appointing (i) Chimbewa as the sole-managing conservator and child support obligee and (ii) Mabvurunge as the possessory conservator and child support obligor. The trial court granted judgment in favor of Chimbewa for prenatal and postnatal healthcare expenses and for retroactive child support. The trial court ordered Mabvurunge to make monthly payments toward these judgments and to pay cash medical support. The trial court granted judgment in favor of Chimbewa for her attorney's fees. The final order was consistent with the trial court's July 29, 2019 order, and was signed by the trial court on August 27, 2019. This appeal followed.

## II.    ISSUES RAISED ON APPEAL

Appellant raises four issues on appeal, which we reproduce verbatim:

i.     Did the trial court abuse its discretion in prematurely ordering Calvin to submit to genetic testing?
ii.    Did the trial court abuse its discretion in divesting Calvin of parental rights in the same suit it judged him the likely father?
iii.   Did the trial court abuse its discretion in ordering Calvin to pay Tendai excessive retroactive support, and excessive prospective support, above that authorized by law?

–3–

iv.   Did the trial court abuse its discretion in ordering Calvin to pay Tendai's attorney's fees incurred in her Motions to Adjudicate Parentage suit?

### III.   PRO SE APPELLANT AND ERROR PRESERVATION

Mabvurunge is pro se in this case. Texas Rule of Appellate Procedure 38.1(i) requires an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. 38.1(i). We liberally construe pro se pleadings and briefs. *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). However, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Washington*, 362 S.W.3d at 854. To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Cohn,* 573 S.W.2d at 184–85. Thus, even liberally construed, the appellant must make some specific argument and analysis showing that the record and law support appellant's contentions. *See Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied) ("An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the court to review.").

"The failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal." *In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no

pet.). Our ability to resolve substantive legal questions depends on whether that argument was first preserved in the trial court. *See* TEX. R. APP. 33.1(a)(2) (error preservation is "a prerequisite to presenting a complaint for appellate review"). Texas Rule of Appellate Procedure 33.1 provides several different ways to preserve error. *See* TEX. R. APP. 33.1(a)(1) (preservation can be accomplished by "request, objection, or motion"). The "party seeking to preserve a legal argument for our review usually must invoke a procedure that apprises the trial court of the argument in a way that calls for the trial court to decide that issue." *TXU Portfolio Mgmt. Co., L.P. v. FPL Energy, LLC*, 529 S.W.3d 472, 480 (Tex. App.—Dallas 2016, no pet.). This type of error preservation is typically completed by legal objection based on the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure. *See id.*

Our Court has addressed error preservation and our responsibilities thereof in *Bolling v. Farmers Branch Independent School District*:

> We are not responsible for identifying possible trial court error. *See Canton-Carter v. Baylor College of Medicine*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.). We are not responsible for searching the record for facts that may be favorable to a party's position. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 283–84 (Tex. 1994); *Strange*, 126 S.W.3d at 678. And we are not responsible for doing the legal research that might support a party's contentions. *See Canton-Carter*, 271 S.W.3d at 931–32. Were we to do so, even for a pro se litigant untrained in law, we would be abandoning our role as judges and become an advocate for that party. *See Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.).

315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.).

## IV. STANDARD OF REVIEW

Parentage suits are reviewed under the abuse-of-discretion standard and the trial court's decision "will only be disturbed when it is clear the court acted in an arbitrary and unreasonable manner." *Interest of A.M.R.*, No. 05-21-00235-CV, 2021 WL 2948555, at *4 (Tex. App.—Dallas June 29, 2021, no pet. h.) (mem. op.). In family law cases, the traditional sufficiency standards of review overlap with the abuse-of-discretion standard of review; thus, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Id.*

To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we must determine (i) whether the trial court had sufficient evidence upon which to exercise its discretion and (ii) whether the trial court erred in its application of that discretion. *Id. Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278-79 (Tex. 1987). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998); *Al–Nayem Int'l Trading, Inc. v. Irving Indep. Sch. Dist.*, 159 S.W.3d 762, 763 (Tex. App.—Dallas 2005, no pet.).

## V. DISCUSSION

**Issue One: Did the trial court abuse its discretion in prematurely ordering Calvin to submit to genetic testing?**

Mabvurunge's first issue complains of the trial court's order that required him to submit to genetic testing. However, the trial court ordered him to submit to genetic testing before the final trial, and such an order is not included in the August 27, 2019 judgment. Mabvurunge's notice of appeal does not appeal any order other than the final judgment; his notice of appeal specifically provides:

> 2. The judgment or order appealed from was signed on August 27, 2019.
> 3. Calvin G. Mabvurunge desires to appeal from all portions of the judgment.

Thus, to the extent that Mabvurunge sought to raise an issue as to the trial court's genetic testing order, we must conclude his briefing is inadequate.[2]

During trial, the following exchange occurred as to the admission of Exhibit 29, the genetic testing results regarding Mabvurunge's paternity of E.H.:

> [CHIMBEWA'S COUNSEL] Your Honor, at this time I would offer Exhibit No. 29.
> [THE COURT]: Any objection to Exhibit 29?
> [MABVURUNGE]: Yes, ma'am. I object to Exhibit 29, and my objection—and my objection is I think the DNA testing is premature.
> [THE COURT]: That's overruled.

---

[2] We further note that the record does not indicate Mabvurunge objected to any prior order, including the May 23, 2019 order, for him to submit to genetic testing.

–7–

Thus, Mabvurunge failed to raise a legal objection to admission of the genetic testing result during trial.[3] Nevertheless, Mabvurunge directs us to *Amanda v. Montgomery* in his briefing to argue that the paternity test results were "fruit of the poisonous tree" and, therefore, inadmissible. 877 S.W.2d 482, 486–87 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding). In *Amanda*, our sister court held that a trial court cannot grant an order for genetic testing when requested by an individual who had not made a prima facie showing that he is entitled to bring a proceeding to adjudicate parentage or disprove the father-child relationship. *Id*. (granting mandamus relief from an order for genetic testing requested by a presumed father who had failed to make a prima facie showing that his bill of review challenging paternity was not barred as a matter of law).

However, the instant suit was brought by the mother of the child within four years of the child's birth under chapter 160 of the Texas Family Code. TEX. FAM. CODE ANN. § 160.602(a)(2) (" . . . a proceeding to adjudicate parentage may be maintained by (2) the mother of the child."); FAM. § 160.607(a) (a proceeding brought by . . . the mother . . . to adjudicate the parentage of a child having a presumed father shall be commenced not later than the fourth anniversary of the date of the birth of the child.). That is, unlike the petitioner in *Amanda*, Chimbewa was entitled to bring suit to adjudicate parentage—without the requirement to make a

---

[3] *See generally* TEX. FAM. CODE ANN. § 160.621 (defining the admissibility of results of genetic testing).

prima facie showing—because she (i) was the mother of the child and (ii) brought suit within four years of E.H.'s birth. *See* FAM. §§ 160.602(a)(2), 160.607(a). Accordingly, the trial court had the authority to order Mabvurunge to submit to genetic testing at any time during this proceeding. *See* FAM. § 160.502(a) ("a court shall order a child and other designated individuals to submit to genetic testing if the request is made by a party to a proceeding to determine parentage"), FAM. §160.508 (permitting genetic testing of parents, siblings, children, and relatives of a man who may be the father of a child for good cause, when all individuals are not available), FAM. § 160.622(c) (defining the consequences for declining genetic testing).

The remainder of Mabvurunge's arguments on this issue refer to (i) Hoover's procedural service in the suit, which is not relevant to his issue, and (ii) facts that are not in the record. We cannot consider matters not adequately brought within the trial court record as our appellate record is limited to the trial court record. *See* TEX. R. APP. 34.5–34.6. Mabvurunge has failed to provide appropriate citations to the record. TEX. R. APP. 38.1(i).Mabvurunge has failed to properly brief his first issue. Accordingly, we overrule Mabvurunge's first issue.

**Issue Two: Did the trial court abuse its discretion in divesting Calvin of parental rights in the same suit it judged him the likely father?**

In his second issue, Mabvurunge complains of the conservatorship rights that the trial court appointed to him. His brief does not contain a clear argument for his

contentions.[4] Furthermore, his briefing on this issue raises several facts that are without citation, which we cannot locate in the record. Mabvurunge has not properly briefed this issue. We overrule Mabvurunge's second issue. *See* TEX. R. APP. 38.1(i); *In re B.A.B.*, 124 S.W.3d at 420.

**Issues Three: Did the trial court abuse its discretion in ordering Calvin to pay Tendai excessive retroactive support, and excessive prospective support, above that authorized by law?**

In his third issue, Mabvurunge complains of the trial court's child support determination and order to pay retroactive child support. "A trial court has broad discretion in setting child support payments." *In re P.C.S.*, 320 S.W.3d 525, 540 (Tex. App.—Dallas 2010, pet. denied). Regarding an order for child support, Texas Family Code § 154.001 provides:

> (a) The court may order either or both parents to support a child in the manner specified by the order:
> (1) until the child is 18 years of age or until graduation from high school, whichever occurs later;
> (2) until the child is emancipated through marriage, through removal of the disabilities of minority by court order, or by other operation of law;
> (3) until the death of the child; or
> (4) if the child is disabled as defined in this chapter, for an indefinite period.

FAM. § 154.001(a). The Texas Family Code calculates an obligor's child support obligation by first determining monthly net resources. FAM. §§ 154.061–.062. Here,

---

[4] The record contains no counterpetition, requested relief, or separate requests for conservatorship or possession and access from Mabvurunge.

–10–

the record contains documents and testimony regarding Mabvurunge's gross income. The record contains pay stubs and a W–2 statement that indicate Mabvurunge earned about $4,500 each month from his work as an assistant manager at a store in Washington.[5] Chimbewa testified that Mabvurunge received rental income from a property he owned in Aubrey, Texas.[6] Mabvurunge testified he received no rental income.

As the fact finder in a bench trial, a trial court may choose to believe one witness and disbelieve another. *See In re J.A.L.*, No. 05–12–00298–CV, 2013 WL 4399192, at *3–4 (Tex. App.—Dallas Aug. 15, 2013, no pet.) (mem.op.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* We will not disturb the trial court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *City of Keller*, 168 S.W.3d at 819. Here, in light of the record before us, we cannot conclude the trial court's finding of Mabvurunge's gross monthly net resources of $6,979.86 was an abuse of discretion.

Mabvurunge next asserts that the trial court's calculation of child support was incorrect. However, Mabvurunge does not support his argument with a calculation

---

[5] His paystubs showed he earned in excess of $4,500 in some months. The record showed his previous rent in Washington State was $2,155 each month.

[6] The record contains a quitclaim deed indicating Mabvurunge had some ownership in the property located in Aubrey, Texas.

based upon the Texas Family Code's child support guidelines. *See* Fam. § 154.129 (defining alternative method of computing support for children in more than one household). Here, the record shows Mabvurunge had one child the subject of this trial court proceeding and three other children that were not before this trial court, which Mabvurunge had a duty of support. Thus, the adjusted guideline for computing his child support obligation is 14.75% of his net resources. *See* FAM. § 154.129. Although Mabvurunge asserts the trial court's child support obligation in the amount of $798.90 per month constituted "manifest injustice," he offers no citation to support his contention. Accordingly, we cannot conclude the trial court, in light of the record before us, acted in an arbitrary and unreasonable manner in determining Mabvurunge's child support obligation in the amount of $798.90 per month.

Regarding an order to pay prenatal and postnatal health care expenses and retroactive child support, Texas Family Code § 160.636 provides:

> (g) On a finding of parentage, the court may order retroactive child support as provided by Chapter 154 and, on a proper showing, order a party to pay an equitable portion of all of the prenatal and postnatal health care expenses of the mother and the child.
> (h) In rendering an order for retroactive child support under this section, the court shall use the child support guidelines provided by Chapter 154, together with any relevant factors.

FAM. § 160.636(g)–(h). Here, Chimbewa requested (i) prenatal and postnatal health care expenses and (ii) retroactive child support in her pleadings and during final trial. During trial, Chimbewa testified to prenatal and postnatal health care expenses

–12–

amounting to $5,710.77. Mabvurunge did not controvert or contest the amount of these prenatal expenses. Mabvurunge offered no objection to Chimbewa's request for retroactive child support. In light of the evidence before us, we must conclude trial court's judgment for retroactive child support of $27,163.15 was in accordance with child support guidelines. *See* FAM. §§ 154.129, 160.636(g).[7] We must further conclude the trial court's calculation of Chimbewa's prenatal and postnatal health care expenses—resulting in a judgment in favor of Chimbewa against Mabvurunge in the amount of $2,855.69—was an equitable division of those costs, not an arbitrary or unreasonable act. FAM. § 160.636(g). Coupled with our conclusions on the trial court's child support determination, we must conclude the trial court did not abuse its discretion in its child support determination or its according orders that Mabvurunge pay prenatal and postnatal healthcare expenses and retroactive child support. We overrule Mabvurunge's third issue.[8]

---

[7] At the time of trial, E.H. was 34 months, 11 days old. That time period, multiplied by Mabvurunge's child support obligation is approximately $27,163.15.

[8] We note Mabvurunge asserts in his briefing to our Court that "the trial court erred in not ordering Tendai to respond to all of [his] document requests for discovery." Mabvurunge provides no authority or record citation regarding his discovery requests on Chimbewa and provides no further briefing. The record contains Mabvurunge's answer, filed July 23, 2019, which requested that Chimbewa produce three documents. Nevertheless, there is nothing in the record to indicate Mabvurunge asked the trial court to compel Chimbewa to produce any discovery. We pretermit any further discussion as Mabvurunge has waived his complaint and failed to preserve this issue for our review. *See* TEX. R. APP. 33.1(a)(2)

**Issues Four: Did the trial court abuse its discretion in ordering Calvin to pay Tendai's attorney's fees incurred in her Motions to Adjudicate Parentage suit?**

In his fourth issue, Mabvurunge asserts the trial court abused its discretion in ordering him to pay Chimbewa's attorney's fees. Regarding attorney's fees in a proceeding to adjudicate parentage, Texas Family Code § 160.636 provides:

> (c) . . . the court may assess filing fees, reasonable attorney's fees . . . incurred in a proceeding under this subchapter. Attorney's fees awarded by the court may be paid directly to the attorney. An attorney who is awarded attorney's fees may enforce the order in the attorney's own name.

FAM. § 160.636(c). Here, the record contains Chimbewa's testimony regarding her incurrence of attorney's fees in this proceeding. The record contains Chimbewa's counsel's testimony and affidavit in support of attorney's fees, which—although partially redacted—reflect "(1) the particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing the services." *KBIDC Investments, LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *21 (Tex. App.— Dallas Oct. 9, 2020, pet. filed), reh'g denied (Dec. 10, 2020) (quoting *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019)) (describing that sufficient evidence of attorney's fees includes evidence of each of these five categories).

At trial, Mabvurunge offered the following objection to the attorney's fees evidence:

> [THE COURT] Okay. Mr. Mabvurunge, you stated that you had a chance to review the affidavit. Do you have any objection to the admissibility of the affidavit?
> [MABVURUNGE]: Yes, Your Honor, I do.
> [THE COURT] Okay. What's your objection?
> [MABVURUNGE]: My objection is that attorney's fees are not for this. This is not an enforcement case.
> [THE COURT]: Okay. Is that your only objection?
> [MABVURUNGE]: That's my objection.
> [THE COURT]: Okay. That objection is overruled. [Mother's Counsel's attorney's fees affidavit] is admitted.

In his briefing, Mabvurunge appears to assert that attorney's fees in family law proceedings in Texas are limited to enforcement actions. However, as noted by example above, the Texas Family Code provides several avenues for recovery of attorney's fees in suits affecting the parent-child relationship. *See* FAM. § 160.636(c).[9] Nevertheless, Mabvurunge next asserts that Chimbewa's attorney's fees affidavit was so redacted as to be not competent evidence. Mabvurunge has waived this objection as he failed to raise it with the trial court. *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.) ("To preserve an error for appeal, a party's argument on appeal must comport with its

---

[9] *See also* FAM. § 6.502(a)(4) (defining trial court's authority to enter temporary orders for attorney's fees in dissolution suit), FAM. § 105.001 (defining trial court's authority to enter temporary orders for payment of reasonable attorney's fees in suit affecting parent-child relationship), FAM. § 106.002 ("the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney"), FAM. § 157.167 (defining trial court's authority to enter orders for payment of reasonable attorney's fees and all court costs in an enforcement proceeding).

–15–

argument in the trial court."). Mabvurunge's remaining briefing on this issue (i) does not contain a clear argument for his contentions and (ii) refers to facts that are not in the record. *See* TEX. R. APP. 34.5–34.6. In light of the record before us, we must conclude the trial court did not abuse its discretion in ordering Mabvurunge to pay $5,000 in attorney's fees. Accordingly, we overrule Mabvurunge's fourth issue.

### VI.    CONCLUSION

Having overruled each of Mabvurunge's issues, we affirm the judgment of the trial court.


/Bill Pedersen, III//

191205f.p05                                         BILL PEDERSEN, III
                                                    JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF E. H., A
MINOR CHILD, Appellant

No. 05-19-01205-CV

On Appeal from the 254th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-18-18908.
Opinion delivered by Justice
Pedersen, III. Justices Osborne and
Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Tendai Chimbewa recover her costs of this appeal from appellant Calvin Mabvurunge.

Judgment entered this 25th day of August, 2021.